**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT STERLING, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IRIS ENERGY LIMITED, DANIEL ROBERTS, WILLIAM ROBERTS, BELINDA NUCIFORA, DAVID BARTHOLOMEW, CHRISTOPHER GUZOWSKI, and MICHAEL ALFRED,<br><br>Defendants. | No.: 2:22-cv-07273-JMV-MAH<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MARY-JANE OWEN TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br><u>CLASS ACTION</u><br><br>**Motion Date: March 20, 2023** |

# **TABLE OF CONTENTS**

**BACKGROUND**......................................................................................................1

**ARGUMENT** .........................................................................................................5

   **I.   MOVANT SHOULD BE APPOINTED AS LEAD PLAINTIFF** ................5

      **A.   MOVANT IS WILLING TO SERVE AS CLASS REPRESENTATIVE**..................................................................................6

      **B.   MOVANT HAS THE LARGEST FINANCIAL INTEREST** .................7

      **C.   MOVANT SATISFIES THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE** .............................8

      **D.   MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS** .........................................................9

   **II.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED 10**

**CONCLUSION**....................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................................... 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................. 9

*In re Vicuron Pharm., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004) ............................................................................ 7, 8

**Statutes**

15 U.S.C. § 77z-1 ............................................................................................... 6, 7, 8, 10

15 U.S.C. § 78u-4 ...................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 6, 8, 9

Movant Mary-Jane Owen ("Movant") respectfully submits this memorandum of law in support of her motion for an Order, pursuant to the Securities Act of 1933 (the "Securities Act") and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B):

(a) appointing Movant as Lead Plaintiff for the Class consisting of all persons or entities who purchased or otherwise acquired publicly traded securities of Iris Energy Limited ("Iris" or the "Company"): (1) pursuant and/or traceable to the Offering Documents ("Offering") issued in connection with the Company's November 17, 2021 initial public offering (the "IPO"); and/or (2) between November 17, 2021 and November 1, 2022, both dates inclusive (the "Class Period"); and

(b) approving Movant's selection of The Rosen Law Firm P.A. ("Rosen Law") as Lead Counsel.

## BACKGROUND

This action was commenced on December 14, 2022 against the Company and certain of its officers and directors, alleging violations of the Securities Exchange Act and Exchange Act. That same day, an early notice pursuant to the PSLRA was issued, advising class members of, *inter alia,* the allegations and claims in the

3

complaint, the Class Period, and their option to seek appointment as Lead Plaintiff. A copy of the early notice is attached as Exhibit 1 to the Declaration of Laurence M. Rosen filed herewith ("Rosen Decl." or "Rosen Declaration").

The Company purports to be a leading owner and operator of institutional-grade, highly efficient, proprietary Bitcoin mining data centers powered by 100% renewable energy. The Company's Bitcoin mining operations purportedly generate revenue by earning Bitcoin through a combination of block rewards and transaction fees from the operation of specialized computing equipment called "miners" or "Bitcoin miners" and exchanging these Bitcoin for fiat currencies such as USD or CAD on a daily basis. The Company is organized under the laws of Australia with principal executive offices located at Level 12, 44 Market Street, Sydney, NSW 2000 Australia. The Company's ordinary shares trade in an efficient market on the Nasdaq Exchange ("NASDAQ") under the ticker symbol "IREN".

According to the complaint, the Offering Documents and defendants made false and/or misleading statements and/or failed to disclose that: (1) certain of Iris's Bitcoin miners, owned through its Non-Recourse SPVs, were unlikely to produce sufficient cash flow to service their respective debt financing obligations; (2) certain of Iris's Bitcoin miners, owned through its Non-Recourse SPVs, were unlikely to produce sufficient cash flow to service their respective debt financing obligations;

(3) the foregoing was likely to have a material negative impact on the Company's business, operations, and financial condition; and (4) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

On November 2, 2022, during pre-market hours, Iris issued a press release (the "November 2022 Press Release"), disclosing, inter alia, that "[c]ertain equipment (i.e., Bitcoin miners) owned by [Non-Recourse SPV 2 and Non-Recourse SPV 3] currently produce insufficient cash flow to service their respective debt financing obligations, and have a current market value well below the principal amount of the relevant loans" and that "[r]estructuring discussions with the lender remain ongoing."

With specific respect to each Non-Recourse SPV's respective equipment financing debt obligations, and the inability of Non-Recourse SPV 2 and Non-Recourse SPV 3 to produce sufficient cash flow to service those debts, the November 2022 Press Release disclosed, in relevant part:

> As at September 30, 2022, the Non-Recourse SPVs had the following principal amounts outstanding under their respective limited recourse equipment financing facilities:
>
> - Non-Recourse SPV 1 – $1 million, secured against 0.2 EH/s of

miners.

- Non-Recourse SPV 2 – $32 million, secured against 1.6 EH/s of miners.

- Non-Recourse SPV 3 – $71 million, secured against 2.0 EH/s of miners.

* * *

The secured miners owned by each of Non-Recourse SPV 2 and NonRecourse SPV 3 . . . in aggregate:

- Are currently capable of generating an indicative $2 million of Bitcoin mining monthly gross profit[], compared to aggregate required monthly principal and interest payment obligations of $7 million.

- Have a market value which the Company currently estimates to be approximately $65 to $70 million[], relative to an aggregate $103 million principal amount of loans outstanding as at September 30, 2022.

With specific respect to Iris's ongoing discussions with the relevant lender for Non-Recourse SPV 2's and Non-Recourse SPV 3's respective equipment financing agreements, the November 2022 Press Release stated, in relevant part:

Non-Recourse SPV 2 and Non-Recourse SPV 3 are engaged in discussions with their lender and reached an agreement for a two-week deferral of scheduled principal payments originally due under both equipment financing arrangements on October 25, 2022, to November 8, 2022. Unless a suitable agreement is reached with the lender on modified terms for both equipment financing arrangements, the Group does not intend to provide further financial support to Non-Recourse SPV 2 and Non-Recourse SPV 3.

With respect to Iris's anticipated default on Non-Recourse SPV 2's and Non-Recourse SPV 3's respective equipment financing agreements, and the corresponding negative impact this would have on Company's future operations and financial results, the November 2022 Press Release stated, in relevant part:

> In this case, the Company expects that neither of those Non-Recourse SPVs will be able to make the scheduled principal payment on November 8, 2022, which would result in a default for those NonRecourse SPVs under their respective limited recourse equipment financing arrangements.5 . . . . The [Company] is exploring opportunities to utilize its data center capacity that may become available in the event the [Company] elects to no longer provide financial support to these financing arrangements and the lender forecloses on the equipment owned by the relevant special purpose

vehicles.

* * *

Such default would permit the lender to declare the entire $103 million aggregate principal amount of the relevant equipment financing facilities to be immediately due and payable by Non-Recourse SPV 2 and Non-Recourse SPV 3. We expect that Non-Recourse SPV 2 and Non-Recourse SPV 3 will not have sufficient funds to repay such equipment financing facilities, in which case such lender could enforce its security interest and foreclose on the Bitcoin miners owned by NonRecourse SPV 2 and Non-Recourse SPV 3, respectively, which could result in the loss of such miners and materially reduce the Company's operating capacity, and could also lead to bankruptcy or liquidation of the relevant Non-Recourse SPVs.

On this news, Iris's ordinary share price fell $0.51 per share, or 15.04%, to close at $2.88 per share on November 2, 2022—a nearly 90% decline from the Offering price.

As of the time this Complaint was filed, Iris's ordinary shares continue to trade significantly below the $28 per share Offering price, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movant, and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. MOVANT SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the latter of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. § 77z-1(a)(3)(B); 15 U.S.C. § 78u-4(a)(3)(B) (i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii); 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all of these criteria and is thus entitled to the presumption that she is the most adequate plaintiff of the class, and that, as a result, Movant should be appointed as Lead Plaintiff.

### A. MOVANT IS WILLING TO SERVE AS CLASS REPRESENTATIVE

Movant has made a timely motion in response to a PSLRA early notice. *See* Rosen Decl., Ex. 1. Additionally, as set forth in her certification, Movant has reviewed the complaint and is willing to serve as a representative of the class. *See* Rosen Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the class.

### B. MOVANT HAS THE LARGEST FINANCIAL INTEREST

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii). In assessing the largest financial interest, courts in the Third Circuit assess the following three factors in determining the movant with the largest financial interest: (i) the number of shares the movant purchased during the class period; (ii) the total net funds the movant expended during the class period; and (iii) the approximate loss the movant suffered. *In re Vicuron Pharm., Inc. Sec. Litig.*, 225

F.R.D. 508, 511 (E.D. Pa. 2004) (recognizing that the financial loss is the most significant of these factors).

Movant lost approximately $510.91 in connection with her purchases of Iris securities under the Securities Act and Exchange Act. *See* Rosen Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in Iris securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. MOVANT SATISFIES THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements

11

of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant satisfies the requirements of Rule 23 is sufficient. *Vicuron*, 225 F.R.D. at 511; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

Movant fulfills the requirements of Rule 23. Movant's claims share substantially similar questions of law and fact with the members of the class, and their claims are typical of those of the members of the class. Movant and all members of the class allege that defendants violated the Exchange Act by failing to disclose material facts about the Company's business and financial condition. Movant, as did all of the members of the class, purchased Iris securities at prices artificially inflated by Defendants' misstatements and omissions, and were damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the class.

Thus, the close alignment of interests between Movant and other class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute this action on behalf of the class, provide ample reasons to grant Movant's motion to serve

as Lead Plaintiff.

Movant resides in Toronto, Canada and has been investing for several years. Movant earned a Master of Business Administration and founded a Digital Marketing Agency. Movant also sustained substantial financial losses from investments in Iris securities and is, therefore, extremely motivated to pursue claims in this action.

### D. MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interests of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movant's ability and her desire to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against her that would render Movant inadequate to represent the Class. Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

## II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead

13

counsel, subject to the approval of the Court. 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with lead plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been involved in the action from the beginning by filing the complaint and has been actively researching Movant's and the Class' claims as well as reviewing publicly available financial and other documents while gathering information in support of the claims against the defendants. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in numerous cases throughout the nation. The firm has prosecuted securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors. Rosen Law's resume is attached as Exhibit 4 to the Rosen Declaration.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff; (2) approving Lead Plaintiff's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: February 13, 2023                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen LR-5733
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen