# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SCOTT STERLING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

IRIS ENERGY LIMITED, DANIEL ROBERTS, WILLIAM ROBERTS, DAVID BARTHOLOMEW, CHRISTOPHER GUZOWSKI, MICHAEL ALFRED, J.P. MORGAN SECURITIES LLC, CANACCORD GENUITY LLC, CITIGROUP GLOBAL MARKETS INC., CANTOR FITZGERALD & CO., GALAXY DIGITAL PARTNERS LLC, COMPASS POINT RESEARCH & TRADING, LLC, and MACQUARIE CAPITAL (USA) INC.,

Defendants.

No. 2:22-cv-7273-CCC-MAH
*Document Filed Electronically*

CLASS ACTION

**ORAL ARGUMENT REQUESTED**

**RETURN DATE:**
December 4, 2023

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

OF COUNSEL:
Edmund Polubinski III (*pro hac vice*)
Mari Grace (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
edmund.polubinski@davispolk.com
mari.grace@davispolk.com

Samuel I. Portnoy
Christina M. LaBruno
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
sportnoy@gibbonslaw.com
clabruno@gibbonslaw.com

*Counsel for Iris Energy Limited, Daniel Roberts, William Roberts, David Bartholomew, Christopher Guzowski, and Michael Alfred*

[Additional counsel listed on signature page]

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ......................................................................................................3

I.    Plaintiffs' Securities Act Claims Should Be Dismissed for Failure to Plead an Actionable Misstatement or Omission..............................................3

    A.    Plaintiffs Have Failed to Plead Any Actionable Misstatement or Omission Regarding Equipment Financing ..........................................3

    B.    Plaintiffs Have Failed to Plead Any Actionable Misstatement of Goodwill ................................................................................................9

II.    Plaintiffs' Claims Under Section 10(b) of the Exchange Act and Rule 10b-5 Should Be Dismissed ...........................................................................12

    A.    Plaintiffs Fail to Plead an Actionable Misstatement or Omission ......12

        1.    Plaintiffs Have Failed to Plead an Actionable Misstatement or Omission in the Offering Documents ............13

        2.    The Equipment Financing Disclosures Were Accurate and Complete ................................................................................13

        3.    Disclosures Regarding Iris's Financial and Operational Outlook Were Accurate and Complete and Related Projections Were Not Actionable ............................................14

    B.    Plaintiffs Fail to Plead Scienter ..........................................................17

III.    Plaintiffs' Control Person Claims Fail ..........................................................20

CONCLUSION ..................................................................................................20

i

## TABLE OF AUTHORITIES

P<small>AGE</small>(S)

C<small>ASES</small>

*In re Adams Golf*,
381 F.3d 267 (3d Cir. 2004) ..................................................................... 9, 11, 12

*In re Ascena Retail Grp., Inc. Sec. Litig.*,
2022 WL 2314890 (D.N.J. June 28, 2022) ...................................................... 10

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ......................................................................... 7, 8

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ............................................................................. 16

*Castlerock Mgt., Ltd. v. Ultralife Batteries, Inc.*,
68 F. Supp. 2d 480 (D.N.J. 1999) ................................................................... 18

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ............................................................................... 7

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
442 F. App'x 672 (3d Cir. 2011) ....................................................................... 8

*City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ....................................................................... 14, 15

*Duran v. Equifirst Corp.*,
2010 WL 936199 (D.N.J. Mar. 12, 2010) ........................................................ 15

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017) ...................................................... 10

*Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*,
2013 WL 4517841 (D.N.J. Aug. 26, 2013) ...................................................... 15

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
2012 WL 3779309 (D.N.J. Aug. 29, 2012) ...................................................... 20

*In re NAHC, Inc. Sec. Litig.*,
2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ................................................... 19

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) .................................................................. 18

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) .......................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*,
    575 U.S. 175 (2015) ......................................................................................... 8

*Ortiz v. Canopy Growth Corp.*,
    537 F. Supp. 3d 621 (D.N.J. 2021) ................................................................ 10

*In re PDI Sec. Litig.*,
    2005 WL 2009892 (D.N.J. 2005) ................................................................... 15

*In re Quality Sys.*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................... 17

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) .......................................................................... 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................... 17

*Turnofsky v. electroCore, Inc.*,
    2023 WL 4527553 (D.N.J. July 13, 2023) ....................................................... 4

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ..................................................................... 11, 12

## PRELIMINARY STATEMENT[1]

Defendants' Motion explained in detail that Plaintiffs have failed to state a claim for any violation of the securities laws because Iris's disclosures were accurate and complete.  In response, Plaintiffs' Opposition relies on jarringly selective quotations and either ignores or misstates the law.  For example, Plaintiffs suggest that the Court may not consider portions of the Offering Documents that "do not appear in the FAC."  (Opp. 19)  But binding Third Circuit precedent holds the opposite: that the Court ***must*** consider the relevant disclosures in their totality.  Applying the correct legal standard and considering the relevant disclosures in their entirety, it is clear that Plaintiffs have failed to state a claim. Their Amended Complaint should be dismissed.

**Securities Act Claims**: Plaintiffs' Securities Act claims must be dismissed because Plaintiffs have failed to allege an actionable misstatement or omission in Iris's Offering Documents.  Plaintiffs first contend that statements about Iris's lending arrangements in the Offering Documents—which the Opposition concedes are true on their face—were misleading by omission.  But Plaintiffs have failed to

---

[1] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.  In addition, this reply uses the abbreviations and definitions of terms introduced in Defendants' moving brief.  "Mem." refers to Defendants' moving brief, and "Opp." or "Opposition" refers to Plaintiffs' brief in opposition.

plead an actionable omission here.  The Opposition takes isolated words and phrases out of context in an attempt to create a misimpression that Iris made implicit guarantees about its anticipated cash flow or assured investors that it was "immune" from counterparty risk.  But that is wrong and based on a gross misreading of the Offering Documents, which bluntly disclosed exactly the opposite: that "[w]e may be unable to maintain a level of cash flows from operating activities sufficient to repay the principal and interest on our indebtedness," and, as a result, "[w]e may . . . be forced into bankruptcy, insolvency or liquidation."  (Mem. 7)

Plaintiffs also contend that Iris's goodwill estimates in the Offering Documents were misleading.  But, as explained in the Motion, that claim fails for two reasons.  First, goodwill estimates are opinions, and Plaintiffs do not seriously dispute that they cannot satisfy *Omnicare*'s pleading requirements for opinion statements.  Plaintiffs claim—with no legal support—that they need not satisfy *Omnicare* because goodwill estimates are not opinions.  But Plaintiffs' position is inconsistent with every reported case to have addressed the question.  Second, even if Iris's goodwill had been overstated (which it was not) the alleged overstatement was immaterial as a matter of law.  Plaintiffs do not dispute that the goodwill allegations in the Complaint rely on a gross misreading of Iris's financials.  They nevertheless suggest that a goodwill estimate that is less than 0.5% of Iris's total

assets is somehow material.  But here too, Plaintiffs' position runs headlong into binding Third Circuit precedent, which makes clear that accounting differences of this size are immaterial as a matter of law.

**Exchange Act Claims**: Plaintiffs' Exchange Act claims fail for two discrete reasons.  First, Plaintffs have failed to allege any actionable misstatement or omission—much less with the particularity required by the PSLRA—for many of the same reasons that their Securities Act claims fail.  Second, Plaintiffs' scienter allegations are woefully deficient.  Plaintiffs effectively concede that the Amended Complaint lacks the typical hallmarks of viable scienter allegations: Plaintiffs cite no confidential witnesses, no internal documents, and no suspicious trading. Instead, the Opposition offers only makeweight allegations, asking the Court to infer scienter from nothing more than Defendants' titles and temporal proximity. But the cases—which Plaintiffs again fail to address—make clear that such allegations are insufficient.  Plaintiffs' claims should be dismissed.

## ARGUMENT

I.   **Plaintiffs' Securities Act Claims Should Be Dismissed for Failure to Plead an Actionable Misstatement or Omission**

   A.   **Plaintiffs Have Failed to Plead Any Actionable Misstatement or Omission Regarding Equipment Financing**

Plaintiffs do not dispute that they have not pleaded any affirmative misstatements in the Offering Documents about Iris's equipment financing.  (*See* Mem. 14-15)  Indeed, they concede that the statements about equipment ownership

and counterparty risk in the Offering Documents were true.  (Opp. 18)

Instead, it is now clear that Plaintiffs are pursuing an omissions claim only—
*i.e.*, Plaintiffs assert Iris should have disclosed more about its equipment financing in the Offering Documents.  But it is well-established that the Securities Act imposes "no affirmative duty to disclose any and all material information." *Turnofsky v. electroCore, Inc.*, 2023 WL 4527553, at *7 (D.N.J. July 13, 2023). Instead, as Plaintiffs concede, an omission is actionable only if it violates a regulatory disclosure duty or causes an actual statement in the challenged disclosures to be false or misleading.  (Opp. 13; *accord* Mem. 15-16, 29)  Because Plaintiffs identify no applicable regulatory duty, their claims depend entirely on whether they have plausibly alleged that statements in the Offering Documents are misleading by omission.  They have not.

Plaintiffs' claims about equipment financing rest principally on two alleged omissions: (1) the equipment was owned through non-recourse SPVs; and (2) the SPVs allegedly were not capable of producing sufficient cash flow to service their debt.  But Plaintiffs have failed to allege how any other statement in the Offering Documents is misleading by virtue of these alleged omissions.

The Opposition asserts that Iris had somehow assured investors that it "had 'more sustainable cash flows' than its competitors, which purportedly made it immune from 'increased counterparty risk.'"  (Opp. 14-16, 18)  But the Offering

Documents never said any such thing.  Plaintiffs quote isolated words and phrases out of context to mischaracterize what the Offering Documents actually say.  Iris never asserted that it was "immune" from anything, much less counterparty risk. (*See* Mem. 19, n.11)  Rather, the statement from which Plaintiffs pulled the words "increased counterparty risk" is a discussion about the generalized benefits of owning Bitcoin mining data centers rather than "outsourcing infrastructure and operations and maintenance to third-parties," which could result in "potential non-performance, delays and disputes."  (Pr. 102-103)  This discussion does not even refer to the SPV structure at all, much less identify it as a means of avoiding counterparty risk.  Nor does it remotely suggest that Iris was immune from the risk that its lenders would foreclose in the event of default.

Plaintiffs likewise strip four other words out of context to suggest that the Offering Documents assured investors Iris had "'more sustainable cash flows' than the competitors."  (Opp. 16)  But here too, the Offering Documents said nothing of the sort.  This statement was another generic observation about the advantages of long-term asset ownership over outsourcing or relying on short-term land leases. (Pr. 11, 102)  Again, nothing about this abstract statement—or any other statement in the Offering Documents—even remotely promised sustainable cash flows for Iris.  Indeed, the Offering Documents did not refer to the SPVs at all, much less promise that the SPVs would have cash flows sufficient to repay the loans.  Nor do

5

Plaintiffs explain why the SPV structure was not *protective* (Mem. 10, 18-19). Notably Iris never promised that the Group would be able to pay off the loans.[2]

Instead—in stark warnings Plaintiffs ignore—Iris did exactly the opposite, repeatedly disclosing the risks that it would default on its loans and that such a default could threaten Iris's very existence.  They explained bluntly that "[w]e may be unable to maintain a level of cash flows from operating activities sufficient to repay the principal and interest on our indebtedness," and, as a result, "[w]e may be required to limit growth, seek additional capital, sell assets, or restructure or refinance our indebtedness" or ultimately "be forced into bankruptcy, insolvency or liquidation."  (Mem. 18)  The Offering Documents even included a dire warning that "***[t]here is substantial doubt about our ability to continue as a going concern.***"  (Pr. 49)  In other words, Iris expressly disclosed what Plaintiffs assert it concealed: that its equipment financing "exposed the Company as a whole (not just the SPVs) to substantial risk in case of default."  (Opp. 16)

Plaintiffs mention in passing two other alleged omissions, but make no serious effort to contend that either would support a claim.  First, Plaintiffs

---

[2] In any case, setting aside Plaintiffs' failure to identify any statement that was misleading by omission, the assertion that Iris was not capable, at the time of the IPO, of producing sufficient cash flow to service its debt is contradicted by the Amended Complaint itself, which concedes (i) that one of the SPV's loans was fully repaid and (ii) that the other two SPVs did not default on their debt until nearly a year after the IPO.  (Mem. 11-12, 22-23)

contend, in a single unsupported paragraph, that Iris should have disclosed that one of Iris's directors held an equity ownership in NYDIG.  (Opp. 21)  But Plaintiffs do not identify any statement that is rendered misleading or any other basis requiring its disclosure.  (*See* Mem. 20, 31 & n.16)  Second, Plaintiffs assert in only one sentence that some unspecified additional "information regarding the collateral pledged" should have been disclosed "because it posed a substantial risk to the livelihood of the Company as a whole."  (Opp. 21)  But Plaintiffs do not identify what "information" they claim was omitted or explain why the SPVs are not *protective* of Iris (Mem. 10, 18-19), much less identify any statement rendered misleading by this supposed omission or any other basis for further disclosure.  In any event, Plaintiffs completely ignore the going concern warning and other disclosures (*id.* at 1, 8-11), which warned of exactly the risk Plaintiffs claim was omitted.

Plaintiffs attempt in various ways to justify their disregard for the actual words of the Offering Documents.  First, Plaintiffs insist that the Court may not consider portions of the Offering Documents that "do not appear in the FAC." (Opp. 19)  But that is squarely contrary to governing Third Circuit precedent.  *See, e.g.*, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 169 (3d Cir. 2014) (noting that courts "are to examine statements in the full context of the documents of which they are part") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1426 (3d Cir. 1997)).  And Plaintiffs themselves concede elsewhere that "the relevant inquiry must" view the Offering Documents "in totality."  (Opp. 17; *see also, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*, 575 U.S. 175, 190 (2015))  This rule prevents plaintiffs from "extracting an isolated statement from a document and placing it in the complaint, even though . . . in the full context of the document, . . . the statement was not [misleading]."  *Burlington Coat Factory*, 114 F.3d at 1426.

Second, Plaintiffs also accuse Defendants of "compartmentalizing" their allegations.  (Opp. 17)  But, as set forth above, Defendants urge the Court to do exactly the opposite: to consider the entirety of the Offering Documents in evaluating whether Plaintiffs have plausibly alleged that they are misleading by omission.  Addressing the allegations individually or cumulatively, "it does not take much to explain that zero plus zero equals zero."  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011).

Third, although Plaintiffs do not even cite—much less address—most of the starkest disclosures cited above and in the Motion, Plaintiffs seek to dismiss Iris's risk warnings as "generic" disclosures of risks that "were already occurring." (Opp. 19-20)  But it is *Plaintiffs'* assertion that is generic, as it does not address the clear, detailed, and tailored cautionary language and risk warnings quoted above, which fully disclosed the risks relating to Iris's equipment financing.  Moreover,

the disclosed risk that the Group "may be unable to maintain a level of cash flows from operating activities sufficient to permit us to repay the principal and interest on our indebtedness" (Mem. 7, 23) was *not* "already occurring" because, as Plaintiffs' allegations show, all payments on the equipment loans were made for nearly a year after the IPO and one loan was even repaid in full.

Finally, Plaintiffs' reliance on *In re Adams Golf*, 381 F.3d 267, 277-78 (3d Cir. 2004) (Opp. 17-18), is misplaced, as the Third Circuit's decision in that case illustrates exactly why Plaintiffs' claims here fail. There, the court concluded plaintiffs *had* identified a specific statement that was misleading by omission. *Adams Golf*, 381 F.3d at 277-78. Specifically, the statement that Adams Golf "'d[id] not sell its products through price sensitive general discount warehouses'" was held misleading by omission because some of its products were, in fact, being sold by Costco. *Id.* This sort of allegation is precisely what is missing in this case. As explained above, Plaintiffs fail to identify any statement in the Offering Documents that is misleading by omission, both because Plaintiffs blatantly distort the challenged statements and because they entirely ignore the statements' accompanying risk disclosures. For that reason, their claims fail.

### B. Plaintiffs Have Failed to Plead Any Actionable Misstatement of Goodwill

As Defendants explained in the Motion, the goodwill reported in Iris's audited financial statements is not an actionable misstatement for two independent

reasons: (i) it is an inactionable opinion; and (ii) it is immaterial as a matter of law. (Mem. 24-26)  Plaintiffs do not seriously address either fatal pleading defect.

First, Plaintiffs insist, without any support, that goodwill is not a statement of opinion.  (Opp. 23)  That position, however, is directly contrary to all relevant authority.  (Mem. 24; *see also In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11-12 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018) (applying three prongs of *Omnicare* to statements about GAAP compliance))[3]  Plaintiffs fail even to cite, much less address, the case law in the Motion or offer any support for their assertion.

Plaintiffs also contend that even if the reported goodwill is an opinion, "*Omnicare* does not require that a Section 11 claim alleging material omissions plead subjective falsity."  (Opp. 23)  This is a non-sequitur.  It is, of course, correct that subjective falsity is only one of three potential bases for opinion liability under *Omnicare*'s three-pronged analysis.  But Plaintiffs have failed to satisfy *any* of those prongs (Mem. 25-26) and their Opposition does not show otherwise.

Second, the Motion identified a critical error in Plaintiffs' Amended

---

[3] This settled rule of law applies equally to goodwill reported under International Financial Reporting Standards ("IFRS") and under Generally Accepted Accounting Principles ("GAAP").  *See* Mem. 24 (listing cases); *In re Ascena Retail Grp., Inc. Sec. Litig.*, 2022 WL 2314890, at *7 (D.N.J. June 28, 2022); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 669-70 (D.N.J. 2021).

Complaint—that it inflated Iris's reported goodwill by a factor of 1,000. As explained in the Motion, once that error is corrected, it is clear any overstatement of goodwill would have obviously been immaterial as a matter of law, even if Plaintiffs could otherwise satisfy *Omnicare*'s pleading standard. (Mem. 26-27)

The Opposition is largely silent on Plaintiffs' error, acknowledging it only by implicitly conceding that reported goodwill was in fact approximately A$800,000,[4] rather than A$800 million. (Opp. 24) Plaintiffs do not dispute that, once corrected, the actual goodwill figure was less than 0.5% of Iris's total assets and about 1% of Iris's "[t]otal comprehensive loss [*i.e.*, a measure of net income] for the year"—a vanishingly small number on a relative basis.

Plaintiffs nevertheless claim that this number is material. Plaintiffs' assertion, however, is squarely inconsistent with binding Third Circuit law, cited in the Motion (Mem. 26-27), that Plaintiffs fail to address. In *In re Westinghouse Sec. Litig.*, the Court of Appeals held that the failure to write down an asset by a similarly negligible percentage of net income (0.54%) was quantitatively immaterial as a matter of law. *See* 90 F.3d 696, 715 (3d Cir. 1996). Plaintiffs offer no answer to *Westinghouse*, which controls. Instead, they cite *Adams Golf* (Opp. 24), which turned on questions of *qualitative* materiality and whether a

---

[4] Not content to accept the actual number, however, Plaintiffs seek to obscure it by rounding up to "nearly 1 million Australian dollars." (*Id.*)

disclosure on a particular topic was material.  381 F.3d at 276-77.  *Adams Golf*'s

holding did not address *quantitative* materiality at all, much less an asset write-

down on an issuer's financial statements.  *Westinghouse*—which *Adams Golf* did

not purport to disturb—answers that question decisively in Defendants' favor.

*Westinghouse*, 90 F.3d at 715. [5]

## II.    Plaintiffs' Claims Under Section 10(b) of the Exchange Act and Rule 10b-5 Should Be Dismissed

### A.    Plaintiffs Fail to Plead an Actionable Misstatement or Omission

Plaintiffs' Opposition largely ignores the portion of Defendants' Motion

explaining that statements challenged under the Exchange Act were accurate and

complete at the time they were made, with many also constituting non-actionable

opinions or puffery.  Indeed, of the roughly 13 pages Plaintiffs devote to their

Exchange Act claims (Opp. 24-37), almost 10 are dedicated to a rote summary of

the Amended Complaint, with no mention of Defendants' Motion.  (*Id.* at 25-34)

Less than three pages are even marginally responsive to the Motion, with few legal

citations and little analysis.  (*Id.* at 34-37)  The Opposition is also nearly silent on

the heightened pleading standard that Plaintiffs face on their Exchange Act claims.

---

[5] *Westinghouse* did reject the "*categorical* assertion that materiality must be quantified at a *specified* percentage of income or assets," including by reference to the "rule of thumb of 5-10 percent of net income [that] is widely used as a general materiality criterion in the accounting profession."  90 F.3d at 714 n.14.  But as in *Westinghouse*, Plaintiffs fail to raise a plausible inference that Iris's reported goodwill—which falls well below this "rule of thumb"—is even remotely material.

1.    *Plaintiffs Have Failed to Plead an Actionable Misstatement or Omission in the Offering Documents*

As explained above and in the Motion, Plaintiffs have failed to plead an actionable misstatement or omission in the Offering Documents, much less with the specificity required by the PSLRA. (*See* Point I *supra*, Mem. 13-15, 29) The Opposition neither offers new arguments in response nor explains how the allegations meet the heightened pleading standard. Because Plaintiffs have failed to meet that burden, these claims fail. (*See id.*)

2.    *The Equipment Financing Disclosures Were Accurate and Complete*

As set forth in the Motion, Iris's disclosures about its equipment financing were accurate and complete. (Mem. 29-31) In response, the Opposition takes issue with only one statement in one conference call on May 11, 2022: that "[t]he only debt is ring-fenced to some of the computers in SPVs." (Opp. 34-35; ¶ 97) But Plaintiffs' discussion of this statement is puzzling and conclusory. As explained in the Motion, this is a classic statement of opinion concerning the legal effect of the SPV structure (later the subject of the Canadian litigation cited in the Amended Complaint), and the Amended Complaint does not plead that it is actionable under *Omnicare*. (Mem. 32) The Opposition ignores this pleading failure; it does not dispute that this statement is an opinion, and it fails entirely to satisfy any of *Omnicare*'s prongs. (Opp. 24-36) Instead, it merely responds "not

13

so" and asserts—with no explanation or supporting citations—that the statement is somehow actionable because the disclosures suggested "to a reasonable investor . . . there was no risk." (Opp. 34) But even if Plaintiffs were right (and they are not), this conclusory assertion would not make this opinion actionable. *See City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023) (opinion actionable *only* "if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language").

　　　3.　　*Disclosures Regarding Iris's Financial and Operational Outlook Were Accurate and Complete and Related Projections Were Not Actionable*

Defendants' Motion explained why the statements at issue concerning Iris's financial and operational outlook or projections were not actionable—either because Plaintiffs failed to allege with the requisite particularity anything false or misleading about them, they were inactionable forward-looking statements, they were inactionable puffery, or some combination of the three. (Mem. 34-36)

Here again, Plaintiffs' Opposition boils down to a single allegedly misleading statement in February 2022: that Iris "was well-positioned to increase growth and profits and had '15 EH/s computing power secured.'" (Opp. 35) But that allegation fails to meet the PSLRA's heightened pleading standard.

As an initial matter, Plaintiffs concede that they have not alleged with the

specificity required by the PSLRA that any actual statement by Iris was false.[6]

That is, Plaintiffs do not and cannot directly allege that Iris's assertion that it had

contracted for "15 EH/s computing power" was false when made in February 2022.

Instead, they assert only that falsity "can be inferred from the fact that just *a year*

*later*, the Company reported a total operating capacity of just 1.7 EH/s."  (Opp. 35)

But Iris's subsequent capacity *one year later* cannot, on its own, support an

inference of falsity—and Plaintiffs cite no authority to the contrary.  Indeed, the

law is clear that considerably shorter intervals do not support such an inference.

*See, e.g.*, *Neiman v. Bulmahn*, 854 F.3d 741, 751 (5th Cir. 2017) (no reasonable

inference that statement that issuer was "within its financing capability" was false

from fact that "three months later, [the issuer] declared bankruptcy") (cited in *City*

*of Warren*, 70 F.4th at 693); *In re PDI Sec. Litig.*, 2005 WL 2009892, at *15

(D.N.J. 2005) (holding "the six-month period between the two statements is not

enough to sustain the Complaint").  The Third Circuit's decision in *City of Warren*

is in accord: that case permitted an inference of falsity from events eight weeks

later "combined with" confidential witness testimony.  70 F.4th at 691-94.  Here,

---

[6] Plaintiffs do not respond at all to Defendants' showing that any Exchange Act claims based on Iris's goodwill opinion are non-actionable (Mem. 37-38), and therefore Plaintiffs have abandoned those alleged misrepresentations.  *See*, *e.g.*, *Duran v. Equifirst Corp.* 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010); *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013).

Plaintiffs ask the Court to infer falsity notwithstanding a 12-month interval and a perfect absence of confidential witness support. There is no basis to do so.

Moreover, Plaintiffs again ignore the actual words of the disclosure, which directly undermine the inference they seek to draw. Iris *expressly warned* that it needed "additional capital to fund the contracted hardware mining purchases" and if "unable to make our payments due under our hardware purchase agreements in full and on time, we risk . . . not receiving the hardware at all, which would reduce our nameplate hashrate capacity and have a material impact on our business, prospects, financial condition and operating results." (Pr. 29)[7] And Plaintiffs' attempt to plead falsity by (distant) temporal proximity is further undermined by the intervening decline in Bitcoin price. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 n.20 (3d Cir. 2004) (rejecting Plaintiffs' attempt to infer fraud from lower-than-forecast results "in light of the recognized impact of Hurricane Floyd on this number").[8]

---

[7] *See also* Pr. 34 ("Our business plan is predicated on multiple assumptions, some of which include our procurement of additional mining equipment with certain performance specifications . . . . Our business plan is subject to change to the extent we are not able to achieve the outcomes consistent with our current assumptions and expectations.")

[8] Plaintiffs assert generically that some statements at issue are not "puffer" [sic], but they do not identify which statements they are talking about—stating only that they "challenge concrete statements"—or why they are not puffery. (Opp. 36) Nor do Plaintiffs mention any of the cases Defendants cite to support
(….continued)

### B.     Plaintiffs Fail to Plead Scienter

Plaintiffs concede they have not alleged any hallmarks of scienter—*i.e.*, they offer no allegations of suspicious trading, no confidential witnesses, and no allegations based on internal documents.

Likewise, Plaintiffs ignore Defendants' showing that allegations advanced in the Amended Complaint affirmatively undermine any inference of scienter.  Most notably, the Opposition is totally silent on the shareholdings of Daniel and William Roberts.  As set forth in the Motion, together they were the largest holders of Iris stock, *and they did not sell a single share during the Class Period*.  (Mem. 42-43)  That fact—and the reality that their interests are totally aligned with shareholders' interests, such that they would have had no motive whatsoever to mislead— dramatically undercuts Plaintiffs' scienter allegations.  Plaintiffs do not dispute that *Tellabs* requires courts to balance competing inferences in determining whether a plaintiff has pled scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  That Messrs. Roberts held the entirety of their shares through the

---

their position.  Plaintiffs cite only a single out-of-circuit case without applying its holdings to these facts.  Indeed, that case is inapposite, as it concerned numerical statements that were directly contradicted by ascertainable facts at the time those statements were made, *In re Quality Sys.*, 865 F.3d 1130, 1143-44 (9th Cir. 2017); it certainly did not concern general statements of optimism such as Iris "looking forward to the upcoming 12 to 18 months, which we expect will be transformational for the Company." (¶ 83)

class period cuts strongly against any inference of scienter.  Particularly in this light, the obvious and most compelling inference to be drawn is that Defendants' numerous warnings materialized when the Bitcoin market turned.

In response, Plaintiffs offer only two makeweight allegations.  The first is a variation on the largely discredited core products doctrine.  (Opp. 38)  Citing only Ninth Circuit case law, Plaintiffs suggest the Court should infer scienter from the fact Messrs. Roberts were Co-CEOs.  (*Id.*)  But the law in this Circuit is clear that a speaker's title alone is insufficient to plead scienter.  *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 556 (D.N.J. 2010) (collecting cases); (*see also* Mem. 42).[9]

Plaintiffs' remaining arguments are all a variation on their assertion that they have alleged scienter by virtue of the temporal proximity between the last allegedly misleading statements on September 13, 2022 and restructuring negotiations several weeks later.  (Opp. 38-39)  But that argument fails both on the law and the alleged facts.  Allegations based on a time lapse are insufficient to plead scienter. *See Castlerock Mgt., Ltd. v. Ultralife Batteries, Inc*., 68 F. Supp. 2d 480, 488 (D.N.J. 1999) ("[A]lleging in a wholly conclusory fashion that an inference of

---

[9] In fact, even in the jurisdictions in which it is recognized, the "core products" doctrine is very rarely sufficient to infer scienter without other particularized allegations, as the cases Plaintiffs cite acknowledge.  (Opp. 38)

defendants' knowledge can be drawn based on the mere [one-month] lapse of time between the release of the Offering documents and the disclosure of the production problems . . . , with nothing contemporaneous to support that conclusion, is insufficient."); *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *20 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) ("[T]he short time frame between an allegedly fraudulent statement or omission and a later disclosure of inconsistent information does not, standing alone, provide a sufficient factual grounding to satisfy Rule 9(b)").  Plaintiffs do not even cite *Castlerock*, much less distinguish it.  In fact, Plaintiffs cite no case law—***not a single case***—in support of their assertion that the temporal proximity of statements is sufficient.

The chronology Plaintiffs try to stitch together from affidavits filed in other cases also fails to support an inference of scienter.  Plaintiffs assert that purported discussions between NYDIG and Iris in October 2022 to restructure the MEFAs suggest Messrs. Roberts had actual knowledge that Iris would default on them at the time of the September 13, 2022 statements.  (Opp. 38-39)[10]  But initial outreach to potentially negotiate better financing terms one month after the September 13 statements hardly constitutes a particularized fact giving rise to a "strong

---

[10] Plaintiffs imply that the Shah Affidavit filed in the separate NYDIG action is somehow evidence of *Iris*'s knowledge.  (Opp. 38)  But Plaintiffs point to no facts from that affidavit—aside from the same mere passage of time—to support actual knowledge by Iris of any alleged falsity of any of the contested statements.

inference" of scienter.  Nor can scienter be inferred from allegations that six weeks

after the same September 13 statements, the lender declared an event of default.

Indeed, it is undisputed the SPVs were servicing their debts at the time.  (Mem. 41)

## III.    Plaintiffs' Control Person Claims Fail

Control person claims must be dismissed if a plaintiff cannot plead a

primary violation of the securities laws.  (Mem. 43-44)  The Opposition does not

contend otherwise.  For that reason alone, these claims fail.

Even if Plaintiffs could plead a primary violation, their control person claims

would still fail because they have not identified any Defendant's culpable

participation in perpetuating fraud, as is required for control person liability.  (*See*

Mem. 44)  Plaintiffs misleadingly cite *Suprema Specialties* to argue they need only

establish the *controlled* person's liability (in this case, Iris).  (Opp. 42)  But

*Suprema Specialties* held no such thing, holding instead that "the controlled person

[need not] be named as a defendant as a predicate to imposing liability upon the

controlling individual defendants."  438 F.3d 256, 285 (3d Cir. 2006).  Regardless,

Plaintiffs have not adequately alleged any Defendant is a control person, since "a

person's title or management role" is insufficient.  *In re Merck & Co., Inc. Sec.,*

*Derivative & ERISA Litig.*, 2012 WL 3779309, at *11 (D.N.J. Aug. 29, 2012).

## <u>CONCLUSION</u>

The Court should dismiss the Amended Complaint with prejudice.

Dated:  November 17, 2023

Respectfully submitted,

**GIBBONS P.C.**

*s/ Samuel I. Portnoy*
Samuel I. Portnoy
Christina M. LaBruno
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
sportnoy@gibbonslaw.com
clabruno@gibbonslaw.com

**DAVIS POLK & WARDWELL LLP**

Edmund Polubinski III (*pro hac vice*)
Mari Grace (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
edmund.polubinski@davispolk.com
mari.grace@davispolk.com

*Counsel for Iris Energy Limited, Daniel Roberts, William Roberts, David Bartholomew, Christopher Guzowski, and Michael Alfred*

**SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP**

*s/ Scott D. Musoff*
Scott D. Musoff
William J. O'Brien (*pro hac vice*)
One Manhattan West
New York, NY 10001
(212) 735-73000
scott.musoff@skadden.com
william.obrien@skadden.com

*Counsel for J.P. Morgan Securities LLC, Cannacord Genuity LLC, Citigroup Global Markets Inc., Macquarie Capital (USA) Inc., Cantor Fitzgerald & Co., Compass Point Research & Trading, LLC, and Galaxy Digital Partners LLC*